IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2026

## IN RE JOHN W. ET AL.[1]

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2024-CV-1934     Adrienne Gilliam Fry, Judge**

_____

### No. M2025-00833-COA-R3-PT

_____

The mother of two minor children appeals the termination of her parental rights. The trial court found that multiple grounds for termination had been proven and that termination of her parental rights was in the children's best interest. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT JR., C.J., delivered the opinion of the court, in which D. KELLY THOMAS and W. MARK WARD, SR. JJ., joined.

Shameem Tate Rohani, Clarksville, Tennessee, for the appellant, Esquinta C.

Travis Nathaniel Meeks, Clarksville, Tennessee, for the appellees, John C. W. Sr. and Candy W.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

The defendant, Esquinta C. ("Mother"), and petitioner, John C. W., Sr. ("Father"), were married when their two children, John W. Jr. and Jordan W. ("the Children"), were born in March of 2013 and May of 2014, respectively. Mother and Father separated in 2015 and divorced in 2018.

On September 27, 2024, Father and his wife, Candy W. ("Stepmother"), (collectively "Petitioners"), filed a Petition for Adoption by Stepparent and Termination of

_____

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

Parental Rights against Mother in the Circuit Court for Montgomery County, Tennessee. Following a trial on April 7, 2025, a final judgment terminating Mother's parental rights was entered on May 12, 2025. This appeal followed. The facts and procedural history relevant to the issues on appeal are stated below.

Pursuant to the final decree of divorce, entered on April 4, 2018, Mother was designated as the primary residential parent, and Father was awarded customary parenting time. Father married Stepmother on July 27, 2018.

Shortly thereafter, Father initiated legal proceedings in the Circuit Court of Etowah County, Alabama, to be designated the primary residential parent and to require Mother to pay child support. Pursuant to a default judgment order entered on December 20, 2018, by the Circuit Court of Etowah County, Alabama, Father was designated as the primary residential parent, Mother was awarded customary parenting time, and Mother was ordered to pay $426 per month in child support. Mother, however, contends that she was unaware of the proceedings in Alabama and the resulting default judgment.

As stated by Mother, the Children resided with Mother from their birth until February of 2019, when Father picked them up at school and, without notice to Mother, took them to Texas, after which Mother did not see the Children for approximately one year. Thereafter, Father arranged for Mother to have visitation through their maternal grandmother, Shoaney A. ("Grandmother"). However, these visits were rare, typically one week in the winter and one week in the summer and were significantly less than Mother was awarded in the divorce decree. These visits ended in 2023 after Mother exercised visitation and allegedly refused to return the Children to Father.

Then, on November 21, 2023, Father filed two identical petitions for orders of protection against Mother in the General Sessions Court of Montgomery County, Tennessee, on behalf of the Children. In each petition, Father alleged, inter alia, that Mother had assaulted the Children by making them watch pornography and masturbate in front of her. He further alleged that Mother threatened the Children with bodily harm if they told anyone of these events.

An ex parte Temporary Order of Protection was granted on November 21, 2023, with a hearing set for January 16, 2024; however, Mother was not served with the petitions or the temporary orders setting a court date.

Father then filed a second Petition for Order of Protection in the General Sessions Court of Montgomery County, Tennessee, on behalf of each of the Children making the same allegations while adding additional details, such as, alleging that the referenced events occurred in July and August of 2023. On the same date as the filing of the petitions, ex parte Temporary Orders of Protection were granted, and a hearing date was set in both cases. The initial hearing was continued to June 25, 2024; however, Mother did not appear.

Following the hearing, two identical Orders of Protection were entered against Mother.[2] In pertinent part, the orders prohibited Mother from coming about and/or contacting Father or the Children by phone, email, messages, mail, or any other type of communication or contact. The orders of protection went into effect on June 25, 2024, and were set to expire on June 25, 2025.

In the interim, on September 27, 2024, Father and Stepmother filed their Petition for Adoption by Stepparent and Termination of Parental Rights. The petition alleged that Mother had abandoned the Children and that termination of her parental rights was in the best interest of the Children. Mother filed a pro se answer to the petition, after which she was provided court-appointed counsel due to her indigency.[3]

The trial on the petition was held on April 7, 2025, during which the court heard testimony from six witnesses including Father, Stepmother, Mother, John Jr., Jordan, and Grandmother. Significantly, the trial court found all witnesses credible except for Mother, whose testimony the court found was "not credible."

Following the conclusion of the trial, the court found that Petitioners had proven two grounds of abandonment, for failure to support the Children and for failure to visit. The trial court also found that termination of Mother's parental rights was in the Children's best interests. The final judgment was entered on May 12, 2025, pursuant to which Mother's parental rights to the Children were terminated.

This appeal by Mother followed.

## ISSUES

Mother presents two issues on appeal.

1. Whether there were sufficient grounds to terminate Mother's parental rights.

II. Whether there was clear and convincing evidence to establish that termination of Mother's parental rights was in the Children's best interest.

Petitioners do not raise any additional issues.

---

[2] The two orders of protection issued by the General Sessions Court for Montgomery County, Tennessee, were under Docket No. 24-JV-585, and 24-W-581.

[3] The trial court also appointed attorney Margaret Doane as the Guardian ad litem for the Children.

STANDARD OF REVIEW

Under both the United States and Tennessee constitutions, "[p]arents have a fundamental constitutional interest in the care and custody of their children." *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citations omitted).

ANALYSIS

I. GROUNDS

To terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

A.  Abandonment by Failure to Support

The trial court found Petitioners proved that Mother abandoned the Children by failing to support as provided in Tenn. Code Ann. §§ 36-6-102(1)(A)(i)(*a*) and 36-1-113(g)(1).

Tennessee Code Annotated § 36-1-102(1), which was amended prior to the filing of the petition, now provides:

> For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for the applicable time period, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant time period[.]

Tenn. Code Ann. § 36-1-102(1)(D). And because the Children were more than four years old at the time of the filing of the petition on September 27, 2024,[4] the applicable period to consider is the four consecutive months immediately preceding the filing of the petition, which is May 27, 2024, to September 26, 2024. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(*a*).[5]

The trial court found that Mother had not paid child support as ordered and had not visited the Children for four consecutive months preceding the filing of the petition, stating:

> Petitioners plead abandonment as grounds to terminate the parental rights of [Mother]. The Court finds that the last support payment made by the Respondent was September 2023. [Mother's] last visitation with the children was August 2023. The Petition for Termination of Parental Rights and Adoption was filed in September 2024. The facts were uncontested. [Mother] failed to pay support and/or visit in the four (4) consecutive months preceding the filing of this petition. The Court finds by clear and convincing evidence that [Mother] did not visit with the children for the four (4) months

---

[4] John Jr. was eleven years old and Jordan was ten years old when the petition was filed.

[5] Tennessee Code Annotated § 36-1-102(1)(A)(i)(*a*) reads:

If the child is four (4) years of age or more at the time of the filing of a petition for termination of parental rights, for a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

preceding the filing of the Petition. The Court further finds that [Mother] has not had any meaningful contact with the minor children for even beyond the four (4) month lookback period. Therefore, the Court finds by clear and convincing evidence that the grounds for termination of parental rights have been established pursuant to T.C.A. 36-1-113(g).

As the trial court correctly found, it is undisputed that Mother made no support payments during the four months preceding the filing of the petition. It is also undisputed that over the previous several years she only made three payments for a total of $356.34. During the same time, she was ordered to pay $426 per month. Her last payment was $122.19 in August of 2023, which was more than a year prior to the filing of the petition to terminate her parental rights. Thus, she provided no support for the Children during the relevant four-month period.

We acknowledge Mother's argument in her appellate brief that her failure to pay support was not willful, contending that she was unable to pay support as ordered. However, she failed to raise lack of willfulness as an affirmative defense in her answer to the petition, which is now required under Tennessee Code Annotated § 36-1-102(1)(I). To the contrary, under the heading Affirmative Defenses she asserted: "[Mother] is capable of providing financial, emotional, and physical support to the children and requests that a reunification plan be implemented rather than terminating her parental rights."

When Tennessee Code Annotated section 36-1-102(1)(A)(i)(a) was amended in 2018, which was prior to the commencement of this action, "willfulness" was removed as an element of abandonment, and instead of requiring petitioners to prove willfulness, the burden was shifted to the parent to prove lack of willfulness. In pertinent part, Tennessee Code Annotated § 36-1-102(1)(D) now provides:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. **The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]**

Tenn. Code Ann. § 36-1-102(1)(I) (emphasis added).

As we explained in *In re Nicholas C.*, No. E2019-00165-COA-R3-PT, 2019 WL 3074070, at *13 (Tenn. Ct. App. July 15, 2019), as a result of the 2018 amendment to Tennessee Code Annotated § 36-1-102(1)[(I)], "willfulness is an affirmative defense; thus, the burden is upon [the parent] to establish that his [or her] failure to [visit or support] was not willful.") (citations omitted). Moreover, we have held that the failure of a parent to

raise lack of willfulness as an affirmative defense constitutes a waiver of the affirmative defense of lack of willfulness concerning this statutory ground. *See Branch Banking & Trust Co. v. Hill*, 582 S.W.3d 221, 233 (Tenn. Ct. App. 2019) ("Failure to ple[a]d an affirmative defense generally results in a waiver of the defense." (quoting *ADT Sec. Servs., Inc. v. Johnson*, 329 S.W.3d 769, 778 (Tenn. Ct. App. 2009)). Thus, we hold that Mother has waived this defense as it applies to the ground of abandonment for failure to support.

We therefore affirm the trial court's finding that Petitioners proved by clear and convincing evidence that Mother abandoned the Children by failing to financially support them during the relevant period.

## B. Abandonment by Failure to Visit

The trial court found that Mother did not visit with the Children for the four months preceding the filing of the Petition and that she has not had any meaningful contact with the minor children for even beyond the four-month lookback period. Therefore, the trial court found that this ground of abandonment had been established. Mother contends this was error because her failure to visit was not willful.

Like the ground of abandonment for failure to support the Children, Mother failed to raise a lack of willfulness as an affirmative defense. However, "[w]hile . . . failure to raise an affirmative defense can result in a waiver, the key question is generally whether the opposing party had sufficient notice of the defense to attempt to rebut it." *Amber Brazilian Exp. Res., Inc. v. Crown Labs., Inc.*, No. E2011-01616-COA-R3-CV, 2012 WL 982969, at *3 (Tenn. Ct. App. Mar. 21, 2012). Here, Petitioners were provided with notice that Mother would argue that her failure to visit was not willful. Thus, we hold that the affirmative defense was not waived. Nevertheless, whether the defense has merit is a separate issue.

The trial court found, and it is undisputed, that Mother had not visited or communicated with the Children for over a year prior to the filing of the petition. More specifically, the trial court found it uncontested that her last visit with the Children was in August of 2023. Nevertheless, Mother insists her failure to visit was not willful because the orders of protection prohibited her from visiting with or contacting the Children. However, Mother took no legal action to obtain supervised visitation or otherwise modify the orders of protection. We also note that the orders of protection went into effect on June 25, 2024, while the petition to terminate her parental rights was filed on September 27, 2024. Thus, the order of protection was not in effect during the entire four-month period preceding the filing of the petition, and Mother failed to explain why she did not visit or call the Children before the order of protection went into effect.

As we explained in *In re Adoption of Angela E.*, 402 S.W.3d 636, 642 (Tenn. 2013), an order suspending a parent's visitation rights does not preclude a finding that the parent

willfully failed to visit the children. As was the case in *Angela E.*, the preponderance of the evidence in the case at bar supports the conclusion that Mother willfully failed to visit the Children. This is evident because she did not visit them before the orders of protection went into effect, and she took no action to modify the orders of protection thereafter to be afforded, at a minimum, supervised visitation or telephonic communication.

Therefore, we affirm the trial court's finding that Petitioners proved by clear and convincing evidence that Mother abandoned the Children by failing to visit during the relevant period.

Because we have determined that at least one statutory ground for terminating Mother's parental rights has been proven, we must now decide if Petitioners have proven, by clear and convincing evidence, that termination of Mother's parental rights is in the best interest of the Children. *See* Tenn. Code Ann. § 36-1-113(c); *see also White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004).

## II. BEST INTEREST

Once a court has found that at least one ground for termination has been established, the interests of parent and child diverge. *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (citation omitted).

In determining whether termination of parental rights is in a child's best interest, courts must consider the "relevant and child-centered factors applicable to the particular case." Tenn. Code Ann. § 36-1-113(i)(1). The statutory scheme also recognizes that not all statutory factors may be relevant, or applicable, in every case. *See* Tenn. Code Ann. § 36-1-113(i)(3) ("All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order."). Moreover, these statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (citations omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether it amounts to clear and convincing evidence that termination is in the child's best interest. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

Acting pursuant to the above protocol, the trial court made specific findings regarding the following best interest factors and concluded that the combined weight of the factors favored termination of Mother's parental rights. We discuss each of the trial court's findings in turn.

Factor (A) concerns the effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority. The trial court found this factor weighs in favor of termination because for the past 6 years, since 2019, the Children have primarily lived with Father, who has provided stable, permanent housing and has met their financial needs. The trial court also found that the Children had not seen Mother in almost two years, nor have they had any contact with her. Thus, the court concluded that termination would allow continued stability and permanence, as Father would remain the primary caregiver. The evidence in the record preponderates in favor of this finding.

Factor (B) considers the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition. The trial court found that this factor does not apply because there would be no change of caretakers or physical environment.

We agree that there will be no change of caretakers or physical environment if Mother's parental rights are terminated. However, the evidence favors the finding that a change of caretakers, should that occur, would adversely affect the Children because the Children are well served by their present caretakers, Petitioners, and by the physical environment in which they have resided for years, in Petitioners' home. Accordingly, we find that this factor favors termination of Mother's parental rights.

Factor (C) concerns whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs. The trial court found that this factor weighs in favor of termination because Mother has not demonstrated consistency in meeting the Children's basic needs and has not participated in the Children's education since 2019. Further, the trial court found that Mother has not met the Children's safety needs, as the Children, whom the trial court found to be credible witnesses, testified to feeling unsafe in her home. Specifically, the Children cited incidents of domestic violence in her home, and both testified that she punched Jordan in the stomach and threatened physical harm if they told anyone. Based upon these and other findings, the trial court found that Mother has not demonstrated the continuity and stability in meeting the Children's basic needs. Based on our review of the record, we find the evidence preponderates in favor of the trial court's findings concerning this factor.

Factor (D) considers whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment. In this regard, the trial court found that this factor weighs in favor of

termination because, inter alia, the Children have not seen or communicated with Mother in two years. And as the trial court found, the Children "have virtually no relationship with her." We agree, for the evidence does not preponderate against these findings.

Factor (E) concerns whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child. In this regard the trial court found that the Children have not seen Mother or had any phone calls with her since the Summer of 2023, and that they have virtually no relationship with her. Thus, the court found this factor favored termination.

The evidence does not preponderate against this finding.

Factor (F) concerns whether the child is fearful of living in the parent's home. The trial court found that the Children are fearful of living in Mother's home, "specifically when Respondent's boyfriend is present." They testified to incidents of domestic violence between them, and on one occasion Mother was bleeding after an altercation. The court also found that mother punched Jordan in the stomach so hard that he fell down. And as noted earlier, the Children testified that Mother threatened them with physical harm if they disclosed events that occurred during the visits.

Based on these and other findings, the trial court found that this factor weighs in favor of termination of Mother's parental rights, and the evidence does not preponderate against these findings.

Factor (G) concerns whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms. The trial court found that this factor does not apply explaining, "The minor children testified that they were fearful of returning to Mother's home. However, there was no testimony related to Mother or members of her household triggering or exacerbating such trauma."

We respectfully disagree with this conclusion because the Children testified about domestic violence in Mother's home, that Mother's boyfriend hit her, causing her face to bleed, and Mother punched Jordan in the stomach so hard that he fell down. The Children also testified that she threatened them with physical harm if they disclosed events that occurred during the visits. Based upon these and other facts, we conclude that the preponderance of the evidence relevant to this factor favors termination.

As for factor (H), whether the child has created a healthy parental attachment with another person or persons in the absence of the parent, the trial court found that the Children have developed a relationship with Stepmother, and she has taken on the role of a mother figure. She and Father take care of the Children's daily needs, and the Children feel safe with her and enjoy spending time with her.

Based on these and other findings, the trial court found that this factor weighs in favor of termination of both parents' parental rights, and the evidence preponderates in favor of this finding.

Factor (I) concerns whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage. In this regard, the trial court found that this factor weighs against termination because the Children have a relationship with Mother's oldest son and her two younger sons, none of whom are the subject of this litigation. The trial court also made the specific finding that "[w]hen the minor children visited [Mother], her oldest son cared for them and made them feel safe" and further noted that "termination would likely prevent further development of these relationships as long as the brothers live in [Mother's] home."

We find the evidence preponderates in favor of the trial court's finding concerning this factor.

Factor (J) concerns whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner. The trial court found that this factor favored termination because:

> [Mother] testified that she had been charged with possession [of] marijuana and theft. She testified that she had to be drug tested for six months following the drug charge. However, the minor children testified that while they were in [Mother's] care, [Mother] smoked marijuana in front of them and offered it to them. [Mother] has denied that she ever smoked in front of them and thus has made no efforts to correct that situation. There are no assurances that she would not use the drug in front of the minor children if they were to visit again. Likewise, [Mother] did not acknowledge any issues with domestic violence and thus has taken no steps to correct such a situation. In general, [Mother] has given no indication that she has made any adjustment of circumstances, conduct or conditions, and instead denies anything occurred.

We agree that the evidence preponderates in favor of the finding that this factor favors termination.

- 11 -

Factor (K) considers whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions. In this regard, the trial court found this factor favors termination because:

> [Mother] has not sought any programs or services to improve conditions in the home for the minor children. [Mother] has denied all allegations and denied that any correction is needed. She has not sought help for domestic violence, anger issues, or drug use. She has made no efforts to make any changes.

Because the record contains no evidence of programs, services, or community resources that were available to assist Mother in making a lasting adjustment of circumstances, conduct, or conditions, we find this factor is not applicable. [6]

Factor (L) concerns whether the Tennessee Department of Children's Services made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department. The trial court found this factor was not applicable. We agree.

Factor (M) concerns whether the parent has demonstrated a sense of urgency in establishing paternity for the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest. The trial court reasoned that this factor favored termination because:

> [Mother] failed to participate in the modification [of the parenting plan] in 2019, and did not investigate the change of custody until six (6) months later. Grandmother, not [Mother], initiated contact with Father and facilitated visitation with the minor children. She showed no urgency to regain custody or even to determine the cause of the change. In 2024, [Mother] failed to appear at the Order of Protection hearing, and a Default Judgement was entered against her. She showed no urgency in protecting her rights to visit her minor children or [in] defending against the allegations in the Order of Protection Petition.

The evidence does not preponderate against these findings.

---

[6] We have deemed a factor inapplicable in cases where no evidence was presented that was relevant to the factor. *See In re Colten B.*, No. E2024-00653-COA-R3-PT, 2025 WL 252663, at *10 (Tenn. Ct. App. Jan. 21, 2025) (citing *e.g.*, *In re Lilah G.*, No. E2023-01425-COA-R3-PT, 2024 WL 3825077, at *10 (Tenn. Ct. App. Aug. 15, 2024) (agreeing with the trial court that factor (F) did not apply because there was no proof regarding it presented at trial).

- 12 -

Factor (N) addresses whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult. In this regard, the trial court found that this factor favored termination because both children confirmed the allegations in the Orders of Protection and described incidents of domestic violence. The Children testified to domestic violence between Mother and her boyfriend and described Mother punching Jordan in the stomach. They also testified that Mother made threats of physical harm if they ever disclosed events that occurred during visits.

We agree that this factor favors termination of Mother's parental rights.

Factor (O) concerns whether the parent has ever provided safe and stable care for the child or any other child. The trial court found that this factor weighs against termination because Mother's oldest son testified that he had no issues living in her home. The trial court also noted that Mother's two younger children were too young to provide testimony.

The evidence does not preponderate against this finding.

As for factor (P), which addresses whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive, the trial court found that this factor weighs in favor of termination because:

In the past five (5) years, [Mother] has paid no financial support. During her testimony, she did not give any indication that she understood the necessity of financial support to meet the minor children's basic material needs. When the minor children were in her care, she did not provide a safe environment, and did not testify to any changes, nor did she acknowledge any issues. Her failure to acknowledge any issues indicates that she does not understand a child's needs for safety and stability in the home. Further, she testified that she has not been involved in the minor children's education since 2019.

The evidence does not preponderate against the finding that this factor weighs in favor of termination.

Regarding factor (Q), which pertains to whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive, the trial court found that this factor favored termination because:

[Mother] has not supported the minor children financially in the past five (5) years. This indicates a lack of commitment to providing for their basic material needs through financial support. She gave no indication in her testimony that she believed she should have been paying financial support

- 13 -

and did not recount any efforts to pay during periods of employment. When the minor children were in [Mother's] care, she did not create a safe environment but instead denied anything unsafe or inappropriate has ever occurred in her home. Further, she has not demonstrated a commitment to ensuring their educational needs are met. She testified that she has not participated in their education since 2019. This does not demonstrate a commitment to meeting their educational needs.

The evidence preponderates in favor of the trial court's findings regarding this factor.

Factor (R) addresses whether the physical environment of the parent's home is healthy and safe for the child. The trial court made these findings:

Both minor children testified that they feel unsafe with [Mother] and have described an unsafe environment. They testified that [Mother] and her boyfriend often engaged in domestic violence and on at least one occasion [Mother] was bleeding. [Mother] frequently yells at them and uses profanity. The minor children testified that she physically punched Jordan. [Mother] also exposed the minor children to drugs and other inappropriate behaviors such as, the requesting that they pee in a plastic bag, teaching them to masturbate, forcing them [to] shower together, and twerking in front of them. This is neither a safe environment, nor a healthy one based upon the physical violence, drugs, and sexual situations.

Based on these findings the trial court found that this factor weighs in favor of termination. We agree.

As for factor (S), which concerns whether the parent has consistently provided more than token financial support for the child, the trial court found that Mother has not paid child support since 2018, and she has not financially supported the Children in any way. She has been employed at various temporary jobs in the past five years, and she did not testify that she ever made efforts to support them during her periods of employment.

Based on these findings the trial court found this factor weighs in favor of termination. We agree.

Factor (T) considers whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child. The trial court found that:

[Mother] denied any mental health issues and stated she has been evaluated previously. In terms of emotional fitness, the minor children testified that she

is frequently angry and yelling profanities. Such an unstable emotional state would hinder her from providing the consist and stable care the minor children need. By the minor children's testimony, [Mother's] home is an environment where they do not feel safe

The evidence in the record preponderates in favor of the trial court's finding and this factor favors termination of Mother's parental rights.

Having conducted a de novo review of the trial court's findings of fact, we have determined the evidence preponderates in favor of the trial court's findings of fact except as noted otherwise above. Based on these findings, we conclude that the combined weight of the relevant factors amounts to clear and convincing evidence that termination of Mother's parental rights is in best interest of the Children. *See In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56. Accordingly, we affirm the trial court's determination that termination of Mother's parental rights is in the best interest of the Children.

Because we have affirmed the trial court's determination that grounds for termination have been proven and that termination of Mother's parental rights is in the best interest of the Children, we affirm the termination of Mother's parental rights to the Children.

## IN CONCLUSION

Accordingly, we affirm the judgment of the trial court. Costs of appeal are assessed against the appellant, Esquinta C.

_____
FRANK G. CLEMENT JR., C.J.